1

2

3

4

5 IN THE UNITED STATES DISTRICT COURT

6 FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8 MARVIN G. HOLLIS,                    )     No. C 05-4225 TEH (PR)
                                       )
9        Plaintiff(s),                 )     ORDER GRANTING
                                       )     DEFENDANTS' MOTION FOR
10   vs.                               )     SUMMARY JUDGMENT,
                                       )     RESOLVING PENDING
11 DR. CHARLES LEE, NURSE              )     MOTIONS AND
   CARROL BARRIE AND NURSE             )     INSTRUCTIONS TO THE
12 VICTORIA WENDLING,                  )     CLERK
                                       )
13        Defendants.                  )     (Docket Nos. 10, 13, 14, 15, 17,
   _____     )     18, 21, 22, 28, 30, 31, 34)

14

15

16          Plaintiff, a prisoner at Salinas Valley State Prison ("SVSP"), filed the

17 instant pro se civil rights action for damages under 42 U.S.C. § 1983 alleging

18 deliberate indifference to his medical needs.  Plaintiff specifically alleges that

19 nurses Carrol Barrie and Victoria Wendling, and Dr. Charles Dudley Lee at

20 SVSP, have denied him doctored-ordered orthotics, orthotic shoes and related

21 care.  Plaintiff seeks declaratory, injunctive and monetary relief.

22          Per order filed on February 27, 2006, the Court found that Plaintiff's

23 allegations, when liberally construed, stated a cognizable claim under § 1983 for

24 deliberate indifference to serious medical needs and ordered the United States

25 Marshal to serve the named Defendants.  Defendants now move for summary

26 judgment on the ground that there are no material facts in dispute and that they

27 are entitled to judgment as a matter of law.  Defendants also argue that Plaintiff's

28 claim that he did not receive orthotic inserts does not state a constitutional claim

for deliberate indifference, but may constitute a state tort claim for deprivation of property.  Defendants also maintain that they are entitled to qualified immunity. Plaintiff has filed an opposition and Defendants have filed a reply.  After consideration of all the facts and circumstances set forth herein, this Court now GRANTS summary judgment in favor of Defendants.

## FACTS

The following facts are undisputed, unless otherwise noted:

Plaintiff is an inmate currently incarcerated in Salinas Valley State Prison ("SVSP").  Carrol Barrie and Victoria Wendling were Registered Nurses at SVSP at the time of the allegations in the complaint.  Dr. Charles Lee was the Health Care Manager at SVSP at that time.

While Plaintiff was a prisoner at California State Prison-Sacramento on April 30, 2002, his feet were x-rayed and the x-rays were evaluated by a physician who found them to be within normal limits. Declaration of C. Young in Support of Motion, ("Young Decl."), Exhibit E, AGO 19.  Plaintiff was transferred to California State Prison-Corcoran on August 21, 2002.

After Plaintiff complained of pain in his feet on April 23, 2003, Dr. Krystal ordered another set of x-rays of Plaintiff's feet.  Id. at AGO 21.  The x-rays of Plaintiff's feet were taken on July 3, 2003.  Id. at AGO 22.  The x-rays showed calcaneal spurs on both feet. Id.  A calcaneal spur is a small bony projection on the heel bone.  Declaration of Dr. Charles Lee in Support of Motion, ("Lee Decl."), at 5.  The x-ray also found a possible osteochondroma, a benign bone tumor, on the left foot.  Id.; Young Decl., Exhibit E, AGO 22.

Plaintiff was transferred to SVSP on August 6, 2003.  Id., Exhibit C, AGO 11.  On April 26, 2004, a podiatry consult was ordered for Plaintiff.  The doctor at SVSP noted the calcaneal spurs and osteochondroma on the July 3, 2003 x-

rays.  Id., Exhibit E, AGO 23.

Plaintiff was examined by Dr. Krystal, the podiatrist, on June 10, 2004. Id. at AGO 25.  Dr. Krystal found that Plaintiff suffered from calluses and noted that they were "secondary to pronation" and that Plaintiff has "[e]xcessive pronation in gait."  Id.  Dr. Krystal prescribed "functional ortothics" in size 14 for Plaintiff's right and left shoes.   Id.

Plaintiff was then issued a "chrono" authorizing him to possess orthotic inserts for his shoes in prison, to be in effect from June 10, 2004 until June 10, 2005.  Id., at AGO 27.  The "chrono" form signed by Dr. Lee states, "Inmate Hollis is to receive and allowed to wear one pair of functional orthotics (arch supports) in his shoes in all areas while housed at Salinas Valley State Prison." Id., at AGO 28.

The entry from Plaintiff's medical records on July 15, 2004 notes that the staff in the clinic called the supply desk regarding the orthotics ordered on June 10, 2004.  Id., at AGO 29.

On July 22, 2004, Plaintiff filed an inmate administrative appeal form, Appeal No. 04-04063, stating that his feet "have been in severe pain prior and since functional orthotics were ordered by Dr. Krystal and approved by Charles D. Lee. . ..  To date, medical staff at (SVSP) refuse to provide me with my functional orthotics."  Id., Exhibit G at AGO at 48-50.

Plaintiff's medical records note that Defendant Wendling called the pharmacy on August 12, 2004 "re: who supplies orthotics Rx?"  Id., Exhibit E, at AGO 30.   A "physician request for services" form requesting a follow-up consultation with Dr. Krystal for functional orthotics notes that Plaintiff has a history of painful feet (calluses) on right and left feet "after standing for long periods."  Id., at AGO 24.  It appears that this form was signed as approved on

3

August 26, 2004. Id.  It is unknown to the Court what physician ordered this follow-up.

A "health care services request form" apparently filled out by Plaintiff on August 31, 2004, specifying "request foot pads" was responded to by Defendant Wendling on September 1, 2004. Id., at AGO 31.  Nurse Wendling documented "foot pads recieved [sic] and verified from patient[']s account of signature.  To receive [sic] another accounting says he must pay."  Id.

In response to interrogatories from Plaintiff, Defendant Wendling admits that she did not issue Plaintiff orthotics on September 1, 2004.  Plaintiff's Opposition, Defendant Wendling's Responses to Plaintiff's First Set of Interrogatories, Exhibit E at 2.  Wendling swears that she does not know whether Plaintiff received the orthotics.  Id.  Wendling states that Defendant Barrie told her that Plaintiff "had signed his inmate trust account and that orthotics were paid for out of that account," id. at 5, and that Barrie told her that "Plaintiff would have to pay for orthotics if he wanted to request them again[,]" id. at 6.

Defendant Wendling admits that she spoke to Dr. Lee on or around September 1, 2004 and told him "that she did not know personally whether Plaintiff had received orthotics, but that she was told that he had received them."  Id.  She told Defendant Lee that Defendant Barrie told her that.  Id. at 5.  Defendant Wendling's duties while employed at SVSP were "to receive health slips, to prioritize the requests, to respond to emergencies on the yard, and to help generate the lists of inmates to see a doctor for medical concerns."  Id.

Defendant Barrie, however, states that she "did not speak to Ms. Wendling or Mr. Lee regarding the issue of Plaintiff's orthotics."  Defendant Barrie's Response to Plaintiff's Request for Admissions, Plaintiff's Opposition, Exhibit K at 3-4.  Defendant Barrie states in response to interrogatories from

4

Plaintiff that she did not "observe Plaintiff sign a (CDC) 193 trust withdrawal or observe any (CDC) 193 trust withdrawal signed by plaintiff for one pair of functional orthotic inserts."  Defendant Barrie's Response to Plaintiff's First Set of Interrogatories, Plaintiff's Opposition, Exhibit K at 3-4.  Barrie further states that "V. Wendling and C. Lee never spoke to [her] regarding this issue.  The first [she] heard of this is when this issue was presented through litigation.  Id. at 5.

However, in her amended response to Plaintiff's interrogatories, Barrie admits that she became aware of Plaintiff's complaint regarding orthopedic foot care in February, 2006.  Amended Response to Interrogatories, at 4.  Defendant Barrie's duties at SVSP involve supervising the medical clinics.  Id.  She "does not provide supplies, nor does she have involvement with the yard clinics."  Defendant Barrie's Response to Plaintiff's First Set of Interrogatories, Plaintiff's Opposition, Exhibit K at 4-5.

The staff response to Plaintiff's appeal at the informal level  which appears to have been delivered to Plaintiff on September 16, 2004 indicates that Appeal No. 04-04063 was partially granted and notes, "[r]eview of the scheduling shows you are scheduled to be seen on 9/02/04."  Young Decl., Exhibit G at AGO 48.  It further notes that at the appointment on September 2, 2004, Plaintiff was "seen and your medical issues addressed."  Id.

Plaintiff then submitted his "formal level" appeal on Inmate Appeal No. 04-04063 dated September 28, 2004 stating, "[n]or have I been provided treatment as ordered for my feet."  Id.  The response at that level completed on December 13, 2004  stated with regard to the orthotics, "[r]eview of the physician's orders reveals that functional orthotic inserts were ordered on June 10, 2004.  They were issued to you on 9/1/04 by the yard R.N.  You received all ordered care."  Id., Exhibit G, AGO 49.  The appeal appears to be signed by staff

member A. Brager and approved by Division Head Kathleen M. Wall.  Id.

Plaintiff was seen on December 30, 2004 by Dr. Tortolini at SVSP.  Dr. Tortolini's notes reflect that Plaintiff had an "orthotic shoe" chrono.  Id., Exhibit E, AGO 33.  The next day, Dr. Lee denied the chrono by Dr. Tortolini for "orthotic shoes"  AGO 32.  Plaintiff's medical records reflect a follow-up appointment on January 5, 2005 that notes that Plaintiff "still waits for orthotic shoes. Chrono written." AGO 34.

Plaintiff filed a second inmate appeal, Number 05-00459 on February 2, 2005, requesting "functional orthotics" and "orthotic shoes" Id., Exhibit H, AGO 61.  On February 3, 2005, the Second Level Appeal Response was issued in response to Plaintiff's Appeal No. 04-04063.  Id., Exhibit G, AGO 58.  In the response, Dr. Lee noted that Form No. 580466 in Plaintiff's unit health record signed by V. Wendling, R.N., states that the foot pads were received and verified from patients account of signature and that to receive another, accounting says he must pay.  Id.  Based upon that documentation, Dr. Lee found that "appellant was issued the orthotic inserts.  We have no information to indicate otherwise." Id. The Director's Level decision on Plaintiff's Appeal No. 04-04063 was issued on May 27, 2005, denying the appeal based on a finding that the orthotics were issued on September 1, 2004.  Id., AGO 60.

On June 3, 2005, the second level appeal response to Plaintiff's Inmate Appeal No. 05-00459 signed by Defendant Lee discusses that Plaintiff received his orthotics on September 1, 2004.  Id., Exhibit H, AGO 65-66.  The appeal also discusses Plaintiff's statement that the Inmate Property Card reflects that he did not sign for the inserts.  Id.  Dr. Lee states in Plaintiff's Request for Admission, Exhibit G, that on the Second Level Appeal response, R.N. C. Barrie "was consulted as to the issue of whether Plaintiff executed a required signature when

6

orthotic inserts were provided to him.  Defendant also admits he reviewed the relevant data and signed the [appeal]." at 7.  Defendant Barrie, however, has no recollection of being contacted on the appeal, but after reviewing the document, informed the person completing the review that "an inmate who receives a device also receives an Inmate Property Card, in order to avoid having the device confiscated by custody staff."  Barrie's Amended Response to Interrogatories, at 3.  She also "told the reviewer that the Inmate Property Card need not be signed by the inmate."  Id.  An unsigned, undated property card in Plaintiff's central file lists "Size #14 Orthotics." Young Decl., Exhibit F, AGO 47.

In response to Plaintiff's appeal about Dr.  Tortolini's "orthotic shoe chrono" being denied, the Appeal No. 05-00459 second level response signed by Dr. Lee documents that Dr. Tortolini apparently conflated that with Plaintiff's "orthotic insert" chrono and that the "orthotic shoe" chrono was made in error. Id., Exhibit H, AGO 65-66.

Plaintiff was seen in the medical clinic on nine visits between January and November 2005.  Id., Exhibit E, AGO 35-43.  The only documented complaint of foot pain occurring during any of these visits with medical personnel was on July 1, 2005.  On that occasion, Plaintiff apparently complained to the Medical Technical Assistant J. Armstrong at 5:15 p.m. that his feet hurt from having to stand in the "cage" since the morning.  Id.  He apparently was being moved to administrative segregation that day.  Id.

On December 19, 2005, Plaintiff was seen by Dr. Nguyen, who requested a "follow up" consultation with a podiatrist for Plaintiff and noted that Plaintiff's chrono for orthotics was up for renewal.  Id., AGO 45.

Defendant Lee states in his response dated August 22, 2006 to Plaintiff's request for admission that he "have [sic] not received ordered functional orthotic

inserts and orthotic shoes for his fee as ordered and approved," that "[Defendant Lee] has made a reasonable inquiry and that the information known or readily obtainable by Defendant is insufficient to enable Defendant to admit or deny the request." Plaintiff's Opposition, Exhibit G at 14.

In response to Plaintiff's request for admission to Dr. Lee, Lee admitted that on December 22, 2005, he approved for Plaintiff to be accommodated with orthotic shoes. Id. at 12. He also admitted that on June 23, 2006, Plaintiff was seen by Dr. Ira Kristal, "a contract orthopedic specialist employed by SVSP. CDCR documents further reflect that on July 24, 2006, Dr. Kristal referred Plaintiff to the prosthetics clinic" for orthopedic shoes with functional orthotics. Id. at 9.

In his declaration, Dr. Lee swears that Plaintiff's foot condition "does not rise to the level that it would significantly affect his daily activities[]" and that the functional orthotics ordered for Plaintiff "are not medically necessary." Lee Decl. at 5. In opposition to the motion, Plaintiff asserts that "I have continued daily pain in my feet which limits my activities." Declaration of Plaintiff in Support of Opposition at 3.

## DISCUSSION

A.      Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

8

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323.

B.      Analysis

The gravamen of Plaintiff's complaint, filed on October 19, 2005, is that Defendants were deliberately indifferent to his serious medical needs by failing to provide him with a pair of "functional orthotics" that were prescribed by the podiatrist, Dr. Krystal, on June 10, 2004 for his foot pain. Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976).

A "serious medical need" exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (citing Estelle, 429 U.S. at 104), overruled in part on other grounds by WMX

Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment.  Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

A prison official is "deliberately indifferent" if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference."  Id.  If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.  Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm.  See McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  Once the prerequisites are met, it is up to the factfinder to determine whether deliberate indifference was exhibited by the defendant.  Such indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials provide medical care.  See McGuckin, 974 F.2d at 1062 (delay of seven months in providing medical care during which medical condition was left virtually untreated and plaintiff was forced to endure

"unnecessary pain" sufficient to present colorable § 1983 claim). <u>Compare</u> <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) , 439 F.3d at 1091 (prisoner opposing motion for summary judgment entitled to inference that defendant doctor was aware of contents of grievance, medical slips, and another doctor's aftercare instructions in prisoner's medical record, generating genuine issue of material fact as to defendant's deliberate indifference to need for treatment) <u>with</u> <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1058-60 (9th Cir. 2004) (summary judgment in favor of defendant doctor appropriate where evidence showed doctor did not believe that Cogentin use presented a serious risk of harm to plaintiff, and where there was no indication in the record that doctor was aware of a risk that plaintiff was suffering from Klonopin withdrawal; claim that doctor failed to conduct a differential diagnosis did not amount to more than negligence and claim that doctor failed to employ emergency treatment was conclusory); <u>Hallett v. Morgan</u>, 296 F.3d 732, 745-46 (9th Cir. 2002) (plaintiffs could not prove 8th Amendment violation in class action because they "have not demonstrated that delays occurred to patients with [dental] problems so severe that delays would cause significant  harm and that Defendants should have known this to be the case."

Negligence is not enough for liability under the Eighth Amendment. <u>Farmer</u>, 511 U.S. at 835-36 & n4.  An "official's failure to alleviate a significant risk that he should have perceived but did not, . . . cannot under our cases be condemned as the infliction of punishment."  <u>Id.</u> at 838.  Instead, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official."  <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 302-03 (1991)).  Prison officials violate their constitutional obligation only by

11

"intentionally denying or delaying access to medical care." <u>Estelle</u>, 429 U.S. at 104-05.

A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim. <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is generally insufficient to establish deliberate indifference. <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1058, 1059-60 (9th Cir. 2004); <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989). In order to prevail on a claim involving choices between alternative courses of treatment, a prisoner-plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to plaintiff's health. <u>Toguchi</u>, 391 F.3d at 1058; <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996).

In their motion for summary judgment, Defendants argue that they are entitled to summary judgment because there are no material facts in dispute that support Plaintiff's claim that Defendants violated his Eighth Amendment rights. Defendants argue that Plaintiff cannot establish that Defendants were deliberately indifferent because Plaintiff's foot condition does not amount to a serious medical need; Plaintiff's desire for the ordered orthotics constitutes a difference of medical opinion; and Defendants conduct amounts, at most, to negligence.

In support of their argument that Plaintiff's condition does not constitute a serious medical need, they argue that notwithstanding Plaintiff's allegations of substantial pain in his feet in the complaint and in opposition to the motion, Plaintiff failed to complain of pain on his visits to the prison medical clinic after

12

Plaintiff allegedly was denied "functional orthotics" on September 1, 2004 and that "the medical records do not support Plaintiff's claim that he was suffering the severe pain he alleges in his Complaint." However, in opposition to the motion, Plaintiff notes that he was pursuing his administrative appeals as a means of obtaining the necessary orthotics, because his efforts to obtain them from medical staff had been unavailing. Plaintiff's Opposition at 19-20. The Court finds that there is a triable issue of fact raised as to whether Plaintiff's foot problems constitute a "serious medical need." The Court finds that based on the evidence before it, a reasonable jury could conclude that Plaintiff's condition, for which he was prescribed orthotics by Dr. Krystal, constitutes a serious medical need and summary judgment cannot be granted on this basis. McGuckin, 974 F.2d at 1059-60.

Defendants' second argument that their actions do not constitute deliberate indifference because the failure to provide Plaintiff with the orthotics ordered by Dr. Krystal constitutes a difference of medical opinion is similarly unpersuasive. Defendants assert that because it is Dr. Lee's medical opinion that orthotic inserts are not medically necessary to treat Plaintiff's condition, the dispute constitutes a mere "difference of medical opinion" and does not establish deliberate indifference. Plaintiff has opposed the motion with evidence and facts establishing that the orthotics were ordered to treat a medical condition that causes him great pain. Moreover, the evidence before the Court is that Defendants believed that Plaintiff had been provided the prescribed orthotics, which are provided for under California Regulations "based on medical necessity[,]" see 15 C.C.R. § 3350(a) and are provided to indigent prisoners "at state expense[,]" see 15 C.C.R. § 3358(c). There is clearly a triable issue of fact established as to whether the denial of the ordered treatment constitutes more

13

1    than a difference of medical opinion, Toguchi, 391 F.3d at 1058, and not in

2    disregard of an excessive risk to Plaintiff's health. Id.

3          However, the Court finds that no material issue is in dispute as to whether

4    the parties failure to provide the orthotics was the result of Defendants

5    "intentionally denying or delaying access to medical care." Estelle, 429 U.S. at

6    104-05.  The evidence suggests that the failure was clearly the result of errors in

7    communication that lead Defendants to believe that the orthotics had already

8    been provided to Plaintiff.  What Defendants have established, and Plaintiff has

9    failed to raise a triable issue of fact in opposition, is that Defendants were at most

10   negligent in their belief that Plaintiff had already received the orthotics.  This is

11   insufficient to establish deliberate indifference to his serious medical needs.  The

12   Court finds that the uncontroverted evidence in the record shows that Plaintiff

13   Defendants Wendling and Lee were negligent in investigating and determining

14   whether Plaintiff had received the prescribed treatment for his foot pain.

15   Plaintiff's evidence, in the form of responses to interrogatories and requests for

16   admission support that Dr. Lee reviewed the appeals information at the Second

17   Level and, based on statements therein, believed that Plaintiff had received the

18   orthotics from nurse Victoria Wendling.

19         Defendant Wendling, for her part, admits that she did not give the

20   orthotics to Plaintiff and states that she was told by Defendant Barrie that he had

21   received them and that was the basis for her response to his request that they

22   were "received" and that he was required to pay for another set.  However, now

23   it appears based on Defendant Barrie's denial that she ever spoke to Lee and

24   Wendling about the orthotics, that apparently Defendants mistakenly believed

25   that Plaintiff had received the pair of orthotics ordered for him.  That information

26   was repeatedly passed on and was never corrected, creating a result akin to the

27

28                                          14

1   children's game of telephone.

2       It cannot be said that denying Plaintiff another set of functional orthotics

3   based on the mistaken belief that they had been previously provided to him

4   constitutes the "wanton" mental state required to establish deliberate indifference

5   under the Eighth Amendment. See e.g., Frost, 152 F.3d at 1130 (finding no merit

6   in claims stemming from alleged delays in administering pain medication,

7   treating broken nose and providing replacement crutch, because claims did not

8   amount to more than negligence); McGuckin, 974 F.2d at 1059 (mere negligence

9   in diagnosing or treating a medical condition, without more, does not violate a

10  prisoner's 8th Amendment rights).

11      The court is satisfied that Plaintiff has not set forth any facts showing a

12  genuine issue for trial on his claim that defendants were deliberately indifferent

13  to his foot pain, by relying on the mistaken information that he had received the

14  prescribed orthotics. See Fed. R. Civ. 56(e). Plaintiff's unsupported assertions

15  that Wendling intentionally falsified her response to his request for them to

16  deprive him of medical care does not suffice to defeat summary judgment; see

17  also Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (conclusory allegations

18  insufficient to defeat summary judgment). Defendants are entitled to summary

19  judgment as a matter of law. See Celotex Corp., 477 U.S. at 323. Because the

20  Court has determined that Defendants are entitled to summary judgment on this

21  basis, it is unnecessary to resolve Defendants' further arguments that the

22  complaint only states a claim for property deprivation or that Defendants are

23  entitled to qualified immunity with regard to Plaintiff's claims for damages.

24      The Court notes, however, that the evidence before it suggests that

25  Plaintiff never receive the prescribed orthotics, although Defendants apparently

26  previously believed he did. Given that fact, Defendant Lee may wish to ensure

27

28                                  15

that Plaintiff receives the prescribed orthotics, if he has not done so already.

**PENDING MOTIONS**

While the instant motion has been pending, Plaintiff and Defendants have filed numerous motions that require resolution.  Plaintiff has also filed a motion seeking a preliminary injunction or a temporary restraining order (docket no. 13).  In the motion, Plaintiff requests that this Court issue a preliminary injunction or temporary restraining order against "defendants, employees and those persons in active concert with those who received notice to stop doing harmful and unconstitutional things to plaintiff...and to act in a way that will prevent them from violating plaintiff's rights in the future."  Plaintiff's Motion at 4-5.  While the allegations in Plaintiff's motion are far too general for the Court to determine whether injunctive relief would have been appropriate, now that the Court has granted summary judgment in Defendants' favor, it is clear that Plaintiff cannot make the showing of likelihood of success on the merits that is required to establish entitlement to injunctive relief.  See Fed. R. Civ. P. 65; Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1200 (9th Cir. 1980); Bernhardt v. Los Angeles County, 339 F.3d 920, 925 (9th Cir. 2003).  Therefore, the motion is DENIED (docket no. 13).

Plaintiff also filed a motion seeking to stay the motion for summary judgment under Fed. R. Civ. P. § 56(f) on June 18, 2006 (docket no. 14).  In the motion, Plaintiff specified that he had served discovery requests on Defendants that were not complied with at the time of the motion.  However, Plaintiff did not identify therein "what information is sought and how it would preclude summary judgment."  Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998); see, e.g., Nicholas v. Wallenstein, 266 F.3d 1083, 1088-89 (9th Cir. 2001) (district court did not abuse its discretion in denying motion for continuance under Rule 56(f)

16

where plaintiffs had already conducted a large amount of informal discovery and where they did not make clear what information was sought and how it would preclude summary judgment).

At the same time, Defendants filed a motion to stay discovery pending the resolution of this motion (docket no. 15), which is now DENIED as moot. Plaintiff thereafter filed a motion seeking to compel discovery and for "$300.00.00 as reasonable expenses" on July 3, 2006 (docket no. 18) and Defendants have filed a memorandum and declaration in opposition to the motion (docket nos. 19, 20) and have attached their responses to the discovery requests.

Plaintiff's motions must be DENIED (docket nos. 14, 18).  It is clear from the papers submitted by Defendants in response that they have complied with Plaintiff's extensive discovery requests and Plaintiff has attached a large volume of discovery in his opposition to the summary judgment motion, filed on September 14, 2006.  This discovery, including responses to interrogatories and requests for admission, was apparently obtained from Defendants subsequent to the filing of the motion.  Plaintiff has also failed to establish therein that he complied with Fed. R. Civ. P. § 37 and Local Rule 37-1 regarding the discovery he sought.

Plaintiff has also filed two motions alleging that Defendants have failed to comply with discovery and seeking sanctions (docket no. 28, 31) and Defendants have filed a motion seeking leave to amend their responses to Plaintiff's requests for admissions (docket no. 30), which Plaintiff opposes (docket no. 32). Plaintiff's motions are DENIED as unfounded (docket nos. 28, 31) and Defendant's motion to amend the responses is GRANTED (docket no. 30).

Plaintiff's motions seeking an extension of time to file an opposition to

17

1    the summary judgment motion (docket nos. 17, 21, 22) are now DENIED as

2    moot and the Court notes that Plaintiff filed an opposition to the motion on

3    September 14, 2006 (docket no. 23).

4        Plaintiff has also filed a motion requesting the Court to rule on his earlier-

5    filed motion seeking a preliminary injunction or temporary restraining order

6    (docket no. 33), which is now GRANTED.  Plaintiff's motion seeking to amend

7    the complaint to properly identify Defendant Carrol Barrie as such is GRANTED

8    (docket no. 34).

9                                **CONCLUSION**

10       For the foregoing reasons, defendants' motion for summary judgment

11   (docket no. 10) is GRANTED.  The Clerk shall terminate all pending motions as

12   decided by this order, enter judgment in favor of Defendants and close the file.

13

14   SO ORDERED.

15   DATED:   03/29/07

16                                          THELTON E. HENDERSON
                                            United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28                                   18